IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:20-CV-79-FL

| | |
|---|---|
| TIMOTHY Z PLACE, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )     ORDER<br>) |
| CHOWAN UNIVERSITY, | )<br>) |
| Defendant. | ) |

This matter is before the court on plaintiff's motion to remand. (DE 9). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted.

### STATEMENT OF THE CASE

Plaintiff initiated this action on October 17, 2020, in Superior Court of Hertford County, alleging that defendant wrongfully discharged him from his position as head football coach on the basis of his handicap in violation of the public policy set forth in N.C. Gen. Stat. § 143–422.2

On November 20, 2020, defendant filed notice of removal in this court pursuant to 28 U.S.C. § 1446, on the basis of federal question jurisdiction, under 28 U.S.C. § 1331. Defendant asserts in its notice of removal that plaintiff's claims arise under the laws of the United States, specifically, the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act of 1990 ("ADA"). Defendant filed answer that same day, followed by an amended answer on November 25, 2020.

Plaintiff filed the instant motion to remand on December 21, 2020, asserting that his well-pleaded complaint did not present a federal question. Defendant responded in opposition on January 11, 2021, and plaintiff did not reply.

**STATEMENT OF FACTS**

The facts alleged in plaintiff's complaint may be summarized as follows. Plaintiff served as the head football coach of defendant's football program for eleven years. However, on October 15, 2019, he suffered a significant depressive episode, causing him to be unexpectedly absent from his position. "Plaintiff subsequently submitted paperwork required for Family Medical Leave Request and Approval," through his medical provider on October 29, 2018, and was granted a term of leave pursuant to the FMLA, by letter from defendant's president. (Compl. ¶¶ 6-7). On November 18, 2019, plaintiff provided defendant with a certificate of fitness to return to work, signed by his medical provider. Plaintiff was informed that defendant would not allow him to return to the position of head coach. The instant suit followed.[1]

**COURT'S DISCUSSION**

A. Motion to Remand

   1. Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "[I]t is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." Strawn v. AT & T Mobility

---

[1] This is not the first time that a suit filed by plaintiff on these facts has been before this court. Plaintiff's previous suit, Place v. Chowan University, No. 2:20-CV-6, was removed from Superior Court of Hertford County on January 29, 2020, before plaintiff voluntarily dismissed his action pursuant to Rule 41(a)(1)(A)(i). In that complaint, plaintiff specifically cited and relied upon provisions of the FMLA. See, e.g., Complaint at 3, Place v. Chowan University, No. 2:20-CV-6 (E.D.N.C. Jan. 29, 2020), ECF No. 1-1 (citing 29 U.S.C. § 2617(2)).

2

LLC, 530 F.3d 293, 296 (4th Cir. 2008). "[R]emoval statutes must be construed narrowly, and any doubt about the propriety of removal should be resolved in favor of remanding the case to state court."  Barbour v. Int'l Union, 640 F.3d 599, 615 (4th Cir. 2011); see also Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand").

2. Analysis

Under the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  As pertinent here, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," known as federal question jurisdiction.  28 U.S.C. § 1331.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  The natural impact of this rule is that "plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. Accordingly, the "first step" in examining the complaint "is to discern whether federal or state law creates the cause of action." Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005) (quotation omitted).  In many instances, this will end the inquiry because "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808 (1986).

However, even where a complaint facially presents only a state law cause of action, there exists a "small class of 'cases in which a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims.'" Pinney, 402 F.3d at 442 (omissions in original) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808 (1988)); see also Gunn v. Minton, 568 U.S. 251, 258 (2013) (describing these types of cases as belonging to a "slim category"). But "[t]he 'mere presence of a federal issue in a state cause of action' is not enough to confer jurisdiction," and "courts are to be cautious in exercising jurisdiction of this type." Burrell v. Bayer Corp., 918 F.3d 372, 380 (4th Cir. 2019) (quoting Merrell Dow, 578 U.S. at 813); see also Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005) ("[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto."). The following four factors should be examined: whether the "federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 568 U.S. at 258.

Here, the court only addresses the first factor as "[f]ederal jurisdiction will lie only if a case meets all four requirements," Pressl v. Appalachian Power Co., 842 F.3d 299, 303 (4th Cir. 2016), and the instant case fails on the requirement that a federal issue is necessarily raised.

      a.    Necessarily Raised

"A federal question is 'necessarily raised' . . . only if it is a 'necessary element of one of the well-pleaded state claims,'" meaning "[i]t is not enough that federal law becomes relevant by virtue of a 'defense . . . anticipated in the plaintiff's complaint.'" Burrell, 918 F.3d at 381 (first quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 23

4

(1983); and then id. at 14.). Further, "[a] federal question is . . . essential to resolving a state-law claim . . . [if] every legal theory supporting the claim requires the resolution of a federal issue." Id. at 383 (quotation omitted); see also Pinney, 402 F.3d at 442 ("If a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law.").

Here, as guided by Burrell, the court "look[s] only to the necessary elements of [plaintiff's] causes of action to determine whether they raise federal questions under § 1331," and, as was the case in Pinney and Burrell, the court concludes here that "plaintiff['s] state-law claims c[an] be established without resort to federal law." Burrell, 918 F.3d at 382 (citing Piney 402 F.3d at 443).

Plaintiff asserts that his claim for relief arises from his "wrongful termination in violation of . . . § 143-422.2" because he was terminated on the basis of "an actual 'handicap' or alternatively a perceived 'handicap'" and that defendant had no "legitimate legal reason for the plaintiff's termination." (Compl. ¶¶ 15-18).

Section 143-422.2, "known as North Carolina's Equal Employment Practices Act (NCEEPA)," states, in relevant part, that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap." Townsend v. Shook, 323 F. App'x 245, 251 (4th Cir. 2009) (quoting N.C. Gen. Stat. § 143-422.2(a)). While "[n]either the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under the NCEEPA," Smith v. First Union Nat. Bank, 202 F.3d 234, 247 (4th Cir. 2000), the United States Court of Appeals for the Fourth Circuit has held that N.C. Gen. Stat. § 143-422.2 "does apply 'to common law wrongful discharge claims or in connection with other specific statutory remedies.'" McLean v. Patten Cmtys., Inc.,

5

332 F.3d 714, 720 (4th Cir. 2003) (quoting Smith, 202 F.3d at 247); see also Townsend, 323 F. App'x at 251 (explaining that in McLean the Fourth Circuit "held that a plaintiff does have a private cause of action under North Carolina common law for violation of public policy, specifically [section 143-422.2]"). Accordingly, under North Carolina law, "while there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy," Coman v. Thomas Mfg. Co., 325 N.C. 172, 175 (1989) (quotation omitted), with one such public policy being that encapsulated in the NCEEPA. See generally Amos v. Oakdale Knitting Co., 331 N.C. 348, 353 (1992) ("At the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.")

To establish wrongful discharge on account of his handicap, pursuant to and violative of the public policy enumerated in N.C. Gen. Stat. § 143-422.2, plaintiff will either need to provide "direct evidence of discrimination" on account of his alleged handicap or "establish a prima facie case of discrimination." Hardin v. Belmont Textile Mach. Co., 355 F. App'x 717, 721 (4th Cir. 2009) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)). To establish a prima facie case, plaintiff would need to demonstrate that

> (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class.

Id. (quotation omitted); accord Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995) (utilizing the same four prima facie elements for a claim of "wrongfully discharge[] . . . on the basis of [plaintiff's] sex in violation of the public policy enunciated in the North Carolina Equal Employment Practices Act"); Henson v. Liggett Grp., Inc., 61 F.3d 270, 277 (4th Cir. 1995) (age

6

discrimination under NCEEPA).[2]  As to whether plaintiff is a member of a protected class — here, a handicapped person in the language of § 143-422.2(a) — North Carolina courts look to the North Carolina Persons With Disabilities Protection Act, N.C. Gen. Stat. § 168A-1, for guidance, Simmons v. Chemol Corp., 137 N.C. App. 319, 322, (2000) (referencing the act's previous name of "North Carolina Handicapped Persons Protection Act"), which has a definition of "person with a disability" similar to the ADA, Compare N.C. Gen. Stat. § 168A-3(7a), with 42 U.S.C. § 12101(1).

The law, as set forth above, indicates that no federal issue would arise establishing the necessary elements of plaintiff's state law claim.  Plaintiff has resort to a legal theory for his claim of wrongful discharge that would not require resolution of a federal question.  Plaintiff may be able to prove that he is handicapped, within the meaning of state law under § 143-422.2, that defendant's conduct towards him constituted an adverse employment action under state law, that he was meeting his employer's legitimate expectations of performance, as that term is interpreted under state law, and that he was replaced by a similarly qualified applicant that was not handicapped, all without resort to federal law.  Although North Carolina courts "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases," N.C. Dept. of Corr. v. Gibson, 308 N.C. 131, 133 (1983) (citing N.C. Gen. Stat. § 143-422.2), this does not convert state law claims borrowing that framework into a federal issue or one that requires construction or interpretation of federal law.[3]

---

[2] These familiar elements stem, of course, from McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973), and are "a familiar way to resolve claims arising under federal employment discrimination laws." See Laird v. Fairfax County, 978 F.3d 887, 892 (4th Cir. 2020).  This is because the North Carolina Supreme Court has held that it "look[s] to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." N.C. Dep't of Corr. v. Gibson, 308 N.C. 131, 136 (1983).

[3] A conclusion to the contrary would result in a flood of state cases into the federal system by mere dint of state entities relying on the vast body of established legal principles regarding federal statutes in interpreting their own similar state statutes.  See, e.g., Grable, 545 U.S. at 319 ("A general rule of exercising federal jurisdiction over state

Defendant seemingly concedes that North Carolina courts' reliance on federal principles of law for this type of claim does not convert plaintiff's claim of wrongful discharge under state law and public policy into one falling under the court's jurisdiction. Instead, defendant characterizes plaintiff's claim differently, asserting that "[p]laintiff's theory of liability is predicated upon [p]laintiff's allegations that [defendant] 'ignored' [p]laintiff's compliance with the FMLA and, instead, 'by and through its actions or inactions . . . terminated the [p]laintiff from all employment with said [U]niversity." (Def.'s Resp. (DE 11) at 9 (omission in original) (quoting Compl. ¶ 13)).

The court, however, disagrees with defendant's assertion that "[p]laintiff's wrongful discharge claim cannot be established without resolving . . . whether [defendant] violated the FMLA." id. Instead, the court concludes that the well-pleaded complaint does not necessarily raise an issue of the construction of the FMLA and that accepting defendant's argument would impermissibly base federal jurisdiction on a potential defense that may raise a federal question. See, e.g., Franchise Tax Bd., 463 U.S. at 10 ("[A] federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, or that a federal defense the defendant may raise is not sufficient to defeat the claim.").

The complaint unquestionably references the FMLA, repeatedly, in its general factual allegations, including references to plaintiff's submission of an FMLA request, grant of that request, and plaintiff's purported "fulfill[ment] of the obligations required of him under the Family Medical Leave Act to return to his position," which defendant allegedly ignored. (Compl. ¶¶ 6, 8,

---

claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts."). Such a result is in plain tension with the federalism concerns girding removal jurisdiction. See generally Common Cause v. Lewis, 956 F.3d 246, 252 (4th Cir. 2020) ("[R]emoval jurisdiction raises significant federalism concerns.").

8

12-13). However, as already noted, plaintiff's right to relief on his state law claim will not require resolution of whether defendant actually violated the FMLA. See, e.g., Burrell, 918 F.3d at 381 (explaining that the fact that a complaint is "'replete' with federal-law references" does not mean that § 1331 jurisdiction is proper). Rather, defendant's compliance or non-compliance with the FMLA may be resolved independently of the issue of whether the reason plaintiff was terminated was impermissible under North Carolina public policy.

With this in mind, plaintiff's factual allegations regarding the FMLA appear to be attempts to proactively negate defendant's argument that plaintiff's termination was due to his failure to adhere to the FMLA. (See, e.g., Answer ¶ 12 (alleging that plaintiff was informed of the expiration of his FMLA but that he "failed to respond" (emphasis in original)). For example, plaintiff's allegation that he fulfilled his obligations under the FMLA required to return to his position, when read in conjunction with assertion that defendant lacked a legal reason to fire him, discloses a potential, preemptive attempt to stave off arguments regarding his perceived failures under that federal statute and highlight that the only reason he could have been fired was on the basis of his handicap. This, of course, is the exact kind of anticipation by a complaint of a defense raising potential federal issues that federal courts have repeatedly stated does not bring the relevant claim under the court's § 1331 jurisdiction. See, e.g., Merrell Dow, 478 U.S. at 808 ("A defense that raises a federal question is inadequate to confer federal jurisdiction."); Pinney, 402 F.3d at 446 ("'[A] case may not be removed to federal court on the basis of a federal defense' . . . even if the complaint begs the assertion of the defense, and even if 'the defense is the only question truly at issue in the case.'" (quoting Franchise Tax Bd., 463 U.S. at 14)).

Alternatively, such allegations, even if they were construed as asserting "that the defendant's conduct also contravened federal law," may have been included merely "for

9

atmospheric reasons." Virginia ex rel. Hunter Lab'ys, L.L.C. v. Virginia, 828 F.3d 281, 288 (4th Cir. 2016) (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning, 136 S. Ct. 1562, 1568, 1574-75 (2016)). Even if this were true, the instant suit "would not arise under federal law," however, "'because the plaintiff can get all the relief he seeks just by showing [breach of state law],' without proving that the defendant violated federal law." Id. (quoting Merrill Lynch, 136 S. Ct. at 1569).

In addition, the court does not have jurisdiction merely on account of plaintiff's admittedly inadvertent inclusion of a paragraph from his previously removed complaint requesting "all costs and reasonable attorney's fees pursuant to the applicable provisions of the Family Medical Leave Act."[4] (See Compl. at 4; Pl.'s Mem. Supp. (DE 10) at 2-3 ("Plaintiff concedes that he inadvertently included in the prayer for relief language seeking attorney's fees funder the FMLA . . . ."). Basing jurisdiction on such an admitted mistake would serve no federal interest, and, more importantly, does not indicate that his state law wrongful discharge claim, on its own, could not be resolved without resort to federal law. See Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 153 (4th Cir. 1994) ("[I]f a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist.")

At bottom, the references to the FMLA in plaintiff's complaint do not allow the court to exercise jurisdiction under § 1331 because they, inter alia, fail to meet the requirement that a federal issue is necessarily raised by plaintiff's cause of action. This is because the FMLA issues are not a necessary element of plaintiff's claim of wrongful discharge in violation of section 143-

---

[4] Hopefully, this case serves as a lesson to plaintiff's counsel on the cost of such "inadvertence" and the pitfalls of copying over the text of one complaint to another, as was seemingly done between the complaints in this case and the previously removed case. Compare Complaint ¶ 1-33, Place v. Chowan University, No. 2:20-CV-6 (E.D.N.C. Jan. 29, 2020), ECF No. 1-1, with (Compl. ¶¶ 1-23).

10

422.2's public policy. Accordingly, federal question jurisdiction does not exist in the instant suit based on plaintiff's well-pleaded complaint.

Defendant also argues in the alternative that "it is indisputable" that "[p]laintiff's right to relief depends on interpretation of the ADA." (Def.'s Resp. (DE 11) at 9-10). While the complaint makes no reference to the ADA or to the "interactive process," defendant asserts, relying solely on citations to its own answer, (see, e.g., Def.'s Resp. (DE 11) at 6, 9), that the federal issue raised by the complaint is "whether [p]laintiff refused to engage in the interactive process and voluntarily resigned his employment (as opposed to being terminated, as [p]laintiff alleges)." Id. at 10. As with its claim that the FMLA and its interpretation are significantly and necessarily raised by plaintiff's complaint, defendant mistakenly relies on its anticipated defense to why plaintiff's employment ended. This again is not enough to merit federal jurisdiction, see, e.g., Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908), and, in this instance, would require the court to rely impermissibly on defendant's statement of plaintiff's claim, see Burrell, 918 F.3d at 378 ("Under the well-pleaded complaint rule . . . [the court's] § 1331 inquiry is limited to the plaintiff's statement of his own claim . . . ."). The court concludes that plaintiff's right to relief does not necessarily depend on resolution of a substantial question of the ADA, which is unmentioned in the well-pleaded complaint.[5]

Defendant explains this absence by invocation of the artful pleading doctrine as a basis for removal in its notice of removal. (Notice of Removal (DE 1) ¶¶ 20-22). The court cannot agree that the doctrine is relevant here.

---

[5] Moreover, North Carolina courts "have previously held that N.C. Gen.Stat. § 143–422.2 does not impose a corresponding duty of reasonable accommodation by an employer." Head v. Adams Farm Living, Inc., 242 N.C. App. 546, 553, 775 S.E.2d 904, 909 (2015).

11

That doctrine is "an 'independent corollary' to the well-pleaded complaint rule" that stands for the "principle that 'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'" Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) (quoting Franchise Tax Bd., 463 U.S. at 22). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." Id.

However, the doctrine is primarily used "where federal law completely preempts a plaintiff's state-law claim."[6] Id.; see also Caterpillar, 482 U.S. at 397 n.11 ("Although 'occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization, . . . most of them correctly confine this practice to areas of the law pre-empted by federal substantive law.'" (omission in original) (quoting Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 410 n.6 (1981) (Brennan, J., dissenting))). Further, "[t]he 'artful pleading' doctrine cannot be invoked" where a removing defendant "attempts to justify removal on the basis of facts not alleged in the complaint." Caterpillar, 482 U.S. at 397; see also Merrell Dow, 478 U.S. at 809 n.6 ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.").

Here, because the type of preemption concerning courts invoking the artful pleading doctrine is not raised by defendant and because defendant attempts to justify removal based on facts alleged in its own answer rather than the complaint, the artful pleading doctrine is inapplicable. Defendant's citation to the non-binding district court order in Childress v. Charles L. Burks & Co., No.4:95CV00148, 1995 U.S. Dist. LEXIS 16142, at *1 (M.D.N.C. Sep. 25,

---

[6] Defendant does not argue that plaintiff's wrongful discharge claim is preempted by federal law.

1995),[7] is particularly unavailing given that the Second Circuit, the law of which Childress relied upon, has since clarified that the artful pleading rule applies where "Congress has either (1) so completely preempted, or entirely substituted, a federal law cause of action for a state one that plaintiff cannot avoid removal by declining to plead 'necessary federal questions,' or (2) expressly provided for the removal of particular actions asserting state law claims in state court." Romano v. Kazacos, 609 F.3d 512, 519 (2d Cir. 2010) (quoting Rivet, 522 U.S. at 475). This is such a case where "it makes little sense to suggest that the plaintiff acts 'fraudulently' if he chooses to proceed under state law in state court rather than under federal law in federal court." See Moitie, 452 U.S. at 408 n.3 (Brennan, J., dissenting), cited with approval by Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 n.3 (1988).

In sum, remand is proper here because the court lacks subject matter jurisdiction over plaintiff's claim and this civil action because plaintiff's cause of action is not created by federal law and does not fall into the small class of cases in which the complaint establishes that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

## CONCLUSION

Based on the foregoing, this case is REMANDED to the General Court of Justice, Superior Court Division, Hertford County, North Carolina, for further proceedings, pursuant 28 U.S.C. § 1447(c). The clerk is DIRECTED to transmit a certified copy of this order to the clerk of the General Court of Justice, Superior Court Division, Hertford County, North Carolina, and to file in this case a copy of the clerk's transmittal letter with certified copy of the instant order. The clerk is further DIRECTED to close this case.

---

[7] A Westlaw citation is not available.

SO ORDERED, this the 15th day of June, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge
